172 P.3d 1094

**In the Matter of John Doe, A Child Under Eighteen (18) Years of Age.**

**STATE of Idaho, Plaintiff–Respondent,**

v.

**John DOE, Defendant–Appellant.**

**No. 34170.**

Supreme Court of Idaho, Boise, October 2007 Term.

Nov. 23, 2007.

Weibe & Fouser, PA, Canyon County Public Defender, Caldwell, for appellant. Marco DeAngelo argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Lori Fleming argued.

EISMANN, Chief Justice.

This is an appeal from a finding that a juvenile was within the purview of the Juvenile Corrections Act because he engaged in conduct that would, if he had been an adult, have constituted the crime of malicious injury to property in violation of Idaho Code § 18–7001. The juvenile contends that there was insufficient evidence to find that he was within the purview of the Act. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

On July 12, 2001, thirteen-year-old John Doe, his twin brother, and a sixth-grade classmate were walking through a weed-infested vacant lot on their way to the Nampa Recreation Center to go swimming. The vacant lot was located behind an apartment complex. Doe's brother pulled out a cigarette lighter and lit some weeds on fire, which he then extinguished. Doe took the lighter and also lit some weeds on fire. When the flames had spread to a diameter of five inches, his brother and friend told him to put them out. Doe said he wanted to let the flames get a little bigger. When the fire had spread to a diameter of about ten inches, he unsuccessfully tried to blow it out. As the fire grew, Doe's brother and classmate then began to beat it with their shorts, but could not put it out. The boys then ran off in search of a telephone to call the fire department. The fire spread to the nearby apartment complex that was twenty to thirty feet away, causing substantial damage to the complex and the personal property in an apartment.

On August 8, 2001, the State filed a petition alleging that Doe came within the purview of the Juvenile Corrections Act (JCA), Idaho Code §§ 20–501 et seq. It alleged that Doe committed an act that would constitute the crime of felony malicious injury to property if it had been committed by an adult. On September 18, 2001, the State filed a second amended petition containing two counts. Count I alleged that Doe maliciously destroyed personal property valued at over $1000 and owned by William and Jennifer Hankins "by setting a field on fire which traveled to their apartment building burning the Hankin's [sic] apartment and all of their personal property contained therein." Count II alleged that Doe maliciously injured or destroyed real property valued at over $1000 and owned by Robert Bennett "by setting an adjacent field on fire which traveled to the Juniper Court Apartment building burning the structure."

Doe denied the allegations in the second amended petition, and the evidentiary hearing was held on October 10, 2001. After the State rested, John Doe moved to dismiss the petition on the ground that the State had not shown that John Doe had maliciously intended to destroy the apartment building or the contents of the Hankins' apartment. The magistrate judge denied the motion to dismiss, and John Doe rested without producing any additional evidence. After both parties made closing arguments, the magistrate found that the State had proven beyond a reasonable doubt the allegations in the sec-

ond amended petition. After John Doe was sentenced, he timely appealed.

The appeal was first heard by a district judge, who affirmed. John Doe again appealed, and this case was heard by the Idaho Court of Appeals. It applied the doctrine of transferred intent and held that John Doe's intentional wrongful act of setting fire to weeds he did not own was sufficient to constitute the malice. We then granted John Doe's petition for review.

## II. ISSUE ON APPEAL

Did the magistrate judge err by denying John Doe's motion for judgment of acquittal?

## III. ANALYSIS

■ When reviewing a case decided in the magistrate division that has been appealed to the district court, we review the magistrate's decision independently of, but with due regard for, the district court's intermediate appellate decision. *Brinkmeyer v. Brinkmeyer*, 135 Idaho 596, 21 P.3d 918 (2001). In cases that come before this Court on a petition for review of a Court of Appeals decision, this Court gives serious consideration to the views of the Court of Appeals, but directly reviews the decision of the lower court. *Head v. State*, 137 Idaho 1, 43 P.3d 760 (2002).

Idaho Code § 20-505(2) grants the magistrate division of the district court jurisdiction over any juvenile who engages in an act that violates state law and would be a crime if committed by an adult. In this case, the State alleged that Doe engaged in an act that violated Idaho Code § 18-7001 and would constitute the crime of malicious injury to property if Doe had been an adult. That statute, as it existed in 2001, provided as follows:

> Every person who maliciously injures or destroys any real or personal property not his own, or any jointly owned property without permission of the joint owner, or any property belonging to the community of the person's marriage, in cases otherwise than such as are specified in this code, is guilty of a misdemeanor and shall be punishable by imprisonment in the

county jail for up to one (1) year or a fine of not more than one thousand dollars ($1,000), or both, unless the damages caused by a violation of this section exceed one thousand dollars ($1,000) in value, in which case such person is guilty of a felony, and shall be punishable by imprisonment in the state prison for not less than one (1) year nor more than five (5) years, and may be fined not more than one thousand dollars ($1,000), or by both such fine and imprisonment.

Ch. 354, § 1, 1998 Idaho Sess. Laws 1112.

After the State rested, Doe's counsel moved to dismiss the petition on the ground that the State had failed to prove that Doe intended to destroy the apartment complex or the personal property in the Hankins' apartment. On appeal, he challenges the court's denial of that motion.

The State was required to prove that John Doe maliciously injured or destroyed the apartment complex and the personal property in the Hankins' apartment. Idaho Code § 18-7001 defines "maliciously" as "a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law." It was uncontroverted that Doe intentionally set the weeds in the vacant lot on fire and that the fire then spread to the apartment building, burning it and the contents of the Hankins' apartment. It is also uncontroverted that he did not intend to burn the apartment building or its contents.

"Under the common-law doctrine of 'transferred intent' if an accused attempts to injure one person and an unintended victim is injured because of the act, the accused's intent to injure the intended victim is transferred to the injury of the unintended victim, even though the wounding was accidental or unintentional." 21 Am.Jur.2d, Criminal Law, § 135 (1998). In *State v. Clokey*, 83 Idaho 322, 364 P.2d 159 (1961), this Court affirmed the doctrine of transferred intent in a homicide case. However, that doctrine is not limited to homicide cases. As stated in Wayne R. LaFave, *Substantive Criminal Law*, vol. 1, § 6.4(d), 474 (2d ed., West 2003):

On similar principles, where *A* throws a rock at *B's* property intending to injure or destroy it but instead hits and injures or destroys *C's* property, *A* should be guilty of malicious mischief to *C's* property. And if *A* sets a fire with intent to burn *B's* property, but because of a shift in the wind the fire burns *C's* property, *A* should be guilty of the arson of *C's* property.

In this case, Doe intentionally set fire to property not his own (the weeds in the vacant lot) and the fire spread to other property (the apartment complex and the personal property in the apartment). That was sufficient to show that he maliciously injured or destroyed such other property.

■ On appeal, Doe also contends that there was insufficient evidence to show that the weeds he set afire were not his own property. The applicable statute required the State to prove that Doe maliciously injured or destroyed "any real or personal property not his own." In order for the doctrine of transferred intent to apply, the State had to prove beyond a reasonable doubt that the weeds in the vacant lot were not Doe's property. The State did not offer evidence identifying the owner of the vacant lot where Doe set fire to the weeds. Doe did not raise that issue on his motion to dismiss.

The only issue raised by the motion to dismiss was that there was a lack of proof showing that Doe intended to burn the apartment complex and/or its contents. Doe's attorney argued:

Your Honor, first of all, I'll make a motion to dismiss. I don't think the State's met their burden under the malicious injury to property statute. They have—they've shown no evidence that would show that any of this was done maliciously with the intent to destroy personal or real property to that effect, Your Honor.

Doug Strosnider said that the fire started twenty to thirty feet away from the apartment complex. We're not right up next to the apartment complex. We're not trying to light the walls on fire. This happens twenty or thirty feet away. They're just playing in the weeds.

Both Counts I and II in the State's amended petition allege that [John Doe] tried to maliciously destroy both personal property in one of the apartments belonging to the Hankins, as well as the real property at the Juniper Court Apartments. And I don't believe that they've met that element of the case, Your Honor.

Doe's attorney did not argue that there was a lack of evidence showing that the vacant lot was not Doe's property. Even though that issue was not raised by his motion to dismiss, Doe could still have raised it on appeal to the district court. *See, State v. Faught,* 127 Idaho 873, 908 P.2d 566 (1995) (a criminal defendant can raise the insufficiency of the evidence on appeal even though the defendant did not move for a judgment of acquittal at the close of the State's case). However, the record does not show that Doe raised this issue on his appeal to the district court.

■ On an appeal from the district court sitting as an intermediate appellate court, this Court will not consider issues that were not raised before the district court even if those issues had been raised in the magistrate court. *State v. Sheahan,* 139 Idaho 267, 77 P.3d 956 (2003); *Cooper v. Bd. of Prof'l Discipline of the State Bd. of Med.,* 134 Idaho 449, 4 P.3d 561 (2000); *Stonecipher v. Stonecipher,* 131 Idaho 731, 963 P.2d 1168 (1998). In its decision on appeal, the district court identified the issue raised by Doe as, "Did the trial Court commit reversible error by denying Appellant's motion for judgment of acquittal?" The district court began its analysis of the appeal by stating, "Appellant argues on appeal that the motion for judgment of acquittal should have been granted because the State failed to provide sufficient evidence that Appellant had the requisite intent to sustain a conviction for malicious injury to property." The court described the "crux" of Doe's argument as being "that the burning of the building and contents was an accident." The district court's opinion did not address the issue of whether the State had also proven that the vacant lot was not Doe's property. Doe has not pointed to anything in the record showing that he raised that issue in the trial court in connection with

his motion to dismiss, or that he raised it on the appeal to the district court.

The State could prove that the vacant lot was not Doe's property based upon circumstantial evidence. *State v. Humpherys,* 134 Idaho 657, 8 P.3d 652 (2000) (circumstantial and direct evidence possess the same probative value as direct evidence); *State v. Carver,* 94 Idaho 677, 496 P.2d 676 (1972) (convictions for burglary and larceny were upheld based upon circumstantial evidence even though there was no evidence identifying the owner of the building burglarized or of the property stolen and such owner was not called to testify regarding lack of consent to enter the building or to take the personal property inside). We need not address whether a rational trier of fact could reasonably have concluded beyond a reasonable doubt that thirteen-year-old Doe did not own the vacant lot he was walking across on his way to the recreation center. Because he did not raise it on appeal to the district court, we will not consider it on this appeal.

The dissent argues that Doe could not have committed the offense of malicious injury to property because the weeds had no value. Doe did not raise that argument either in the trial court or on appeal, possibly because the statute does not require that the property injured or destroyed have value.

## IV. CONCLUSION

The judgment of the magistrate court is affirmed.

Justices BURDICK and HORTON concur.

Justice J. JONES dissenting.

I respectfully dissent. In my view, the State has failed to show that Doe had the requisite intent to maliciously injure or destroy property. While I agree with the doctrine of transferred intent, as articulated by the Court, I don't believe it can be applied in this case. As I see it, there is no evidence to show that Doe maliciously intended to injure the weedy field in which he was located and, thus, there was no malicious intent to transfer to the adjacent property where the apart-

ments were burned. I would vacate the conviction.

The offense with which Doe was charged applies to a person who "maliciously injures or destroys any real or personal property not his own." There must be a malicious intent and the intent must be directed toward injuring or destroying another's real or personal property. It seems to me that the record does not establish the requisite intent to injure or destroy any property.

To apply the doctrine of transferred intent, it must be shown that a person took action with the intent of injuring or destroying certain property but, while failing to injure or destroy the targeted property, the person injured or destroyed other property. One can imagine such a situation. For example, a person might maliciously sow noxious weed seeds with the intent of infesting his neighbor's property. However, as the seeds are sown a wind gust carries them away from the neighbor's property to the property of another adjoining property owner, who suffers a noxious weed infestation, thereby damaging his property. That is not the situation at hand.

The charging petition alleged that Doe maliciously destroyed the apartments and their contents by setting an adjacent field on fire. One might assume from the charging petition that it was Doe's intent to maliciously injure or destroy the field and that such intent was transferred to the apartments and their contents. However, the evidence presented at trial did not focus upon the question of whether the field was injured or destroyed. Rather, the State's proof focused solely on the question of whether Doe lit some weeds on fire with the intent of destroying them. The magistrate judge found Doe guilty, determining on the one hand that "the lighting of the field on fire" was an intentional act and on the other hand that Doe "clearly had the intent to light the weeds on fire." Apparently, the magistrate judge assumed that an intent to injure or destroy some weeds was synonymous with intending to injure or destroy a field. No evidence was presented at trial to show that Doe intended to set a field on fire or to cause any injury to the

field, the offense alleged in the charging petition.

Doe did intend to destroy some weeds. That appears to be the "property" against which the malicious intent of injury or destruction originated. Apparently, his intent to do harm to the weeds was first transferred to the field in which they were located. Although there is no indication as to whether or not the field suffered any injury, the intent was then transferred to the adjoining apartments and their contents where damage was suffered. The case thus involves a double transfer of intent.

The question then arises as to whether weeds are property within the contemplation of I.C. § 18–7001. If they are property, another interesting question arises as to their value since, in order to be guilty of a felony under that statute, the property intended to be destroyed or injured must exceed $1,000 in value. Few would ascribe much value to a field of weeds. Can one have a malicious intent to destroy a weed of no value, which might be a misdemeanor, transferred to the destruction of valuable property, which is a felony if the property is worth more than a $1,000?

The State of Idaho takes a dim view of weeds. Those of us who grew up on Idaho farms were taught early on to regard weeds as the enemy. They sap the productivity of soil, harm desirable domestic plants located in their vicinity, and are subject to vigorous eradication measures. Allowing weeds to grow on your property creates a fire hazard for your neighbor, as we see in this unfortunate case.

Indeed, few would argue that weeds have any positive attributes. The Nampa City Code expressly designates them as a nuisance. Weeds appear in the nuisance section of the Code as any "[u]ndesirable plant growth that is unkept [sic], unsightly, deleterious, and/or injurious to the public. Weeds include noxious weeds, grasses, unkept [sic] bushes and any plant meeting this description." Nampa City Code, Title III, Chapter Four, § 3–4–1. The Code dictates that weeds be destroyed. "Every person residing, doing business, owning, renting or leasing property within the City shall be re-quired to keep weeds over 8 inches in height continuously cut down, weeded out, removed, sprayed or destroyed." *Id.* at 3–4–8.

Title 22, Chapter 24, Idaho Code provides a comprehensive scheme for destruction of noxious weeds. I.C. § 42–2301 allows canal companies to destroy weeds on their own property, as well as on adjacent property. I.C. § 50–317 permits cities to cut and remove weeds from private property within the city and to assess the cost against the private property so cleared. I.C. § 52–302 gives a person injured by a private nuisance the right to abate it. So, if weeds on adjoining property constitute a fire hazard or other nuisance to a property owner, presumably he can abate it under this provision, if the offending property owner will not do so. However, at oral argument of this case, counsel for the State indicated that a person who exercises self help to eradicate a single weed from a neighbor's property can be criminally culpable under I.C. § 18–7001. That is simply carrying things too far.

There is no hint in the record that Doe was acting nobly to eradicate a nuisance from the property on which he burned the weeds. Doe was obviously acting irresponsibly and negligently and should be held to account, but in a civil action rather than a criminal proceeding. To criminalize the act of destroying weeds, which are a nuisance at best, on the property of another, and particularly to make it a felony, will certainly throw cold water on those who may wish to exercise legitimate self-help efforts to protect themselves from noxious weed infestation, let alone the fire dangers that these pests pose.

As mentioned above, there was no evidence presented at trial to indicate that Doe had caused any injury to the field where the weeds were located. Indeed, because weeds are regarded as pests—unwarranted, unloved, and the subject of destructive action by governments and landowners—one might surmise that the destruction of weeds might result in the improvement of the field in which they were located. At best, destruction of weeds in a field would relieve the landowner of potential liability for damage to neighboring property and elimination of the

need for abatement efforts pursuant to the statutes mentioned above.

Doe certainly should be required to shoulder responsibility for his actions. Remedial action, however, should come in a civil proceeding, rather than a felony conviction. A civil proceeding would place responsibility and provide an appropriate remedy. Perhaps that would allow the court also to determine the responsibility of the property owner who allowed the weedy fuel to accumulate on his property in apparent violation of city ordinance and in disregard of the danger posed to the adjoining property where the apartments were located.

Justice W. JONES concurs.