**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 38896**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2013 Opinion No. 53 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: October 8, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| WILLIAM FRANKLIN WOLFE, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Idaho County. Hon. Michael J. Griffin, District Judge.

Order denying motion for a hearing on motion to reconsider, affirmed; order denying successive Idaho Criminal Rule 35 motion to correct an illegal sentence, affirmed.

Sara B. Thomas, State Appellate Public Defender; Sarah E. Tompkins, Deputy Appellate Public Defender, Boise, for appellant. Justin M. Curtis argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

_____

GUTIERREZ, Chief Judge

William Franklin Wolfe appeals from the district court's order denying Wolfe's motion for a hearing on his motion to reconsider his Idaho Criminal Rule 35 motion to correct an illegal sentence and the district court's subsequent order denying Wolfe's successive Rule 35 motion to correct an illegal sentence. Specifically, Wolfe argues the district court erred by denying the motions based on erroneous conclusions, respectively, that the substantive issue had been previously adjudicated and that Wolfe could not file a successive Rule 35 motion. Wolfe asserts that proper consideration of the merits of his motions demonstrates that the district court, in Wolfe's original criminal proceedings, lacked subject matter jurisdiction over the charge. Accordingly, Wolfe asks this Court to vacate his judgment of conviction and sentence, or alternatively, to remand the case for an evidentiary hearing.

1

## I.

## FACTS AND PROCEDURE

Wolfe is serving a determinate life sentence imposed upon a conviction for first degree murder after a jury found Wolfe guilty in 1982. Years later, Wolfe learned the state district court may have lacked subject matter jurisdiction over the charged offense because the offense occurred on tribal grounds and there was evidence the victim was Native American, or "Indian" as defined in federal law, for purposes of determining federal jurisdiction over the crime.

On December 2, 2004, Wolfe filed a pro se Rule 35 motion alleging an illegal sentence based on his contention that the district court in Idaho lacked subject matter jurisdiction over the underlying criminal proceedings. He argued that jurisdiction over the crime was vested exclusively in the federal courts. The district court summarily denied the motion as untimely on December 14, 2004. Within fourteen days of the denial, Wolfe filed a motion to reconsider the decision. While the motion for reconsideration was pending, Wolfe also filed a second successive petition for post-conviction relief on February 11, 2005.[1] In the second successive petition, Wolfe alleged a claim of ineffective assistance of prior post-conviction counsel based on counsel's failure to raise the claim of lack of subject matter jurisdiction. The district court found the issue of lack of subject matter jurisdiction had possible merit and requested further briefing on the issue. The court also ordered the second successive petition for post-conviction relief to be filed as a separate civil case, along with the Rule 35 pleadings and related court

---

[1] The second successive petition, filed in 2005, was filed approximately twenty-three years after Wolfe's conviction. Wolfe directly appealed his judgment of conviction and sentence, which this Court affirmed. *State v. Wolfe*, 107 Idaho 676, 691 P.2d 1291 (Ct. App. 1984). While that appeal was pending, Wolfe filed a pro se petition for post-conviction relief and, during a hearing on that petition, made an oral Idaho Criminal Rule 35 motion for reduction of his sentence. The district court waited until disposition of the direct appeal before denying the petition and the motion. Wolfe timely filed a notice of appeal. Soon thereafter, Wolfe filed a successive pro se petition for post-conviction relief. The district court denied the successive petition, and again, Wolfe appealed. The two appeals were consolidated for review. The denial of the Rule 35 motion for a reduction of sentence was not included as an issue on appeal. As to the post-conviction petitions, we vacated the district court's orders denying each and remanded the case for further proceedings. *Wolfe v. State*, 113 Idaho 337, 743 P.2d 990 (Ct. App. 1987). Upon remand, Wolfe had an evidentiary hearing, after which the district court denied any relief. Wolfe appealed that denial and we affirmed. *Wolfe v. State*, 117 Idaho 645, 791 P.2d 26 (Ct. App. 1990).

documents.[2] The district court subsequently dismissed the petition for being untimely; it did not explicitly rule on the motion for reconsideration of the Rule 35 denial. Wolfe did not appeal the dismissal of the second successive petition for post-conviction relief.

On April 25, 2011, relying on *State v. Lute*, 150 Idaho 837, 252 P.3d 1255 (2011), Wolfe moved the district court for a hearing on the motion for reconsideration that he had filed in regard to the 2004 Rule 35 motion. He argued the district court's denial of his initial Rule 35 motion to correct an illegal sentence as untimely was erroneous because the court can correct an illegal sentence at any time. The district court denied the motion for a hearing, finding Wolfe had already had a hearing on the issue. Wolfe appealed the denial of the motion for a hearing and, in June 2011, filed a successive Rule 35 motion to correct an illegal sentence, again asserting a lack of subject matter jurisdiction over the original charge. The district court denied the successive Rule 35 motion. The only reason for denial cited by the district court was its conclusion that Wolfe was permitted to file only one motion under Rule 35. Wolfe filed an amended notice of appeal and now challenges both the denial of his motion for a hearing on the stagnant motion for reconsideration and the denial of his successive Rule 35 motion.

## II.

## ANALYSIS

The crux of this case involves whether procedural bars are inapplicable to a Rule 35 motion when the substantive allegation is that the convicting court was without subject matter jurisdiction. Wolfe argues that a motion to correct an illegal sentence may be made at any time and that, because he asserts a lack of subject matter jurisdiction, this Court's consideration of the merits of such a claim is not dependent on the procedure used to assert it. He contends that evidence presented in support of his initial and successive Rule 35 motions shows the district court lacked subject matter jurisdiction over the charged offense for which he was convicted.

The State asserts Wolfe's 2011 appeal from the order denying a hearing on the initial 2004 motion to reconsider is, in actuality, an appeal from the denial of the initial Rule 35 motion and was untimely according to Idaho Appellate Rule 14(a). Therefore, the State maintains the position that this Court now lacks jurisdiction to review Wolfe's challenge. The State characterizes the successive Rule 35 motion as a motion to reconsider, bringing forward the

---

[2] Wolfe had previously filed both the initial Rule 35 motion to correct an illegal sentence and the second successive petition for post-conviction relief in the criminal case.

same substantive issue that was not preserved by a timely appeal from the denial of the initial Rule 35 motion to correct an illegal sentence. Therefore, the State contends this Court lacks jurisdiction to review that order as well. Alternatively, if this Court finds we have jurisdiction to review this appeal by accepting the successive Rule 35 motion as a new action, the State asserts that Wolfe's jurisdictional claim is barred by the doctrine of res judicata.

## A.      Procedure and Scope of Rule 35 Motions

Our Rule 35 jurisprudence is well developed. As written in both 2004 and 2011, the years in which Wolfe filed his Rule 35 motions, Rule 35 required a motion for *reduction* of a sentence, or correction of a sentence *imposed in an illegal manner*, to be filed within 120 days of the entry of the judgment imposing sentence or order releasing retained jurisdiction. I.C.R. 35(b) (2011) and (2004) (amended 2009 and 2011). In contrast, a motion to correct an *illegal* sentence may be entertained at any time. I.C.R. 35(a) (2011) and (2004) (amended 2009 and 2011); *State v. Peterson*, 153 Idaho 157, 160, 280 P.3d 184, 187 (Ct. App. 2012); *State v. Peterson*, 148 Idaho 610, 613-14, 226 P.3d 552, 555-56 (Ct. App. 2010). The time limit for a Rule 35 motion for a discretionary reduction in sentence is carefully prescribed, and the 120-day time limit is a jurisdictional bar for the court to entertain the motion. *State v. Parvin*, 137 Idaho 783, 785, 53 P.3d 834, 836 (Ct. App. 2002). A Rule 35 motion to correct an illegal sentence does not have the same jurisdictional time limits.

As to its purpose, Rule 35 has a narrow scope that, as delineated by the wording in the rule itself, allows a trial court to correct an illegal sentence at any time or to correct a sentence imposed in an illegal manner within 120 days. *State v. Clements*, 148 Idaho 82, 84, 218 P.3d 1143, 1145 (2009); *State v. Huffman*, 144 Idaho 201, 203, 159 P.3d 838, 840 (2007). Our courts have long held that Rule 35 cannot be used as a means to collaterally attack the conviction underlying the sentence. *State v. Self*, 139 Idaho 718, 725, 85 P.3d 1117, 1124 (Ct. App. 2003); *State v. McDonald*, 130 Idaho 963, 965, 950 P.2d 1302, 1304 (Ct. App. 1997); *Housley v. State*, 119 Idaho 885, 889, 811 P.2d 495, 499 (Ct. App. 1991); *see also State v. Burnight*, 132 Idaho 654, 657-58, 978 P.2d 214, 217-18 (1999) (declining to review an automatic waiver of juvenile jurisdiction challenge made through a Rule 35 motion). For example, the defendant in *Housley*, 119 Idaho at 889, 811 P.2d at 499, attempted to use a Rule 35 motion to argue that if his conviction was illegal, his sentence must also be illegal, and he must be allowed to attack his conviction in order to correct his sentence. This Court determined there were other mechanisms,

such as an appeal or petition for post-conviction relief, that a defendant could use to set aside a wrongful conviction, and we then re-emphasized the fact that a Rule 35 motion "subjects only the sentence to re-examination." *Housley*, 119 Idaho at 889, 811 P.2d at 499.

As recently as 2009, the Idaho Supreme Court has maintained the narrow scope of a Rule 35 motion. In *Clements*, 148 Idaho 82, 218 P.3d 1143, the defendant filed a Rule 35 motion to correct an illegal sentence ten years after being convicted of second degree murder with a firearm enhancement and attempted second degree murder with a firearm enhancement. The defendant argued he was illegally sentenced for two firearm enhancements when both shootings arose from the same indivisible course of conduct. The Supreme Court held that a trial court cannot examine the underlying facts of a crime to which a defendant pled guilty to determine if the sentence is illegal under Rule 35. *Clements*, 148 Idaho at 86-87, 218 P.3d at 1147-48. In its rationale, the Supreme Court examined the history of Rule 35 and noted that its purpose is to permit the correction of an illegal sentence, *not* to reexamine errors occurring at trial or before the imposition of the sentence. *Clements*, 148 Idaho at 85, 218 P.3d at 1146 (citing *Hill v. United States*, 368 U.S. 424, 430 (1962)). The *Clements* Court, based on the history of the rule, defined an "illegal sentence" as one that is illegal from the face of the record, does not involve significant questions of fact, and does not require an evidentiary hearing. *Id.* at 86, 218 P.3d at 1147. Rule 35 is interpreted narrowly because, as an illegal sentence may be corrected at any time, the rule must necessarily be limited to uphold the finality of judgments. *Clements*, 148 Idaho at 86, 218 P.3d at 1147. The Court stated:

> Rule 35 is not a vehicle designed to reexamine the facts underlying the case to determine whether a sentence is illegal; rather, the rule only applies to a narrow category of cases in which the sentence imposes a penalty that is simply not authorized by law or where new evidence tends to show that the original sentence was excessive.

*Clements*, 148 Idaho at 86, 218 P.3d at 1147 (citing *State v. Arthur*, 145 Idaho 219, 223, 177 P.3d 966, 970 (2008)). The Court went on to clarify that proper Rule 35 inquiries necessarily involve only questions of law and may not include significant factual determinations in order to resolve the merits of a Rule 35 claim; if a district court does inquire and make significant factual determinations, it exceeds its scope of authority under Rule 35. *Clements*, 148 Idaho at 87-88, 218 P.3d at 1148-49.

We point out that there is nothing specific in the criminal rules regarding a motion to reconsider a decision under Rule 35, but we have adopted the position that a district court is free

to entertain a motion to reconsider an order in a criminal case when made. *See State v. Montague*, 114 Idaho 319, 320, 756 P.2d 1083 1084 (Ct. App. 1988). However, whether a district court can entertain such a motion to reconsider in the criminal context is dependent on the rule under which the preceding motion (and subsequent decision by the district court) was made. *See State v. Bottens*, 137 Idaho 730, 731-32, 52 P.3d 875, 876-77 (Ct. App. 2002).

**B.      Jurisdiction on Appeal**

Despite this jurisprudence, Wolfe cites to *Lute*, 150 Idaho 837, 252 P.3d 1255, and under that authority, asserts the State's procedural arguments in regards to Rule 35 motions do not bar this Court from considering the merits of Wolfe's claim that the court lacked subject matter jurisdiction over his case. In *Lute*, the defendant filed a Rule 35 motion to correct or reduce his sentence in 2007--fourteen years after the district court entered a judgment of conviction for battery with the intent to commit a serious felony and nine years after the expiration of Lute's sentence. Lute filed the motion requesting that the district court correct the judgment of conviction so that the judgment reflected the conviction was not for a sex crime because, as filed in 1993, the judgment did not specify the underlying felony to the battery. Without disturbing the sentence, the district court amended the judgment of conviction to read, "Battery with Intent to Commit a Serious Felony, to-wit, Kidnapping." *Lute*, 150 Idaho at 838-39, 252 P.3d at 1256-57. In 2008, Lute filed a successive Rule 35 motion, alleging that the sentence was not valid because the crime he pled guilty to was not proscribed by the Idaho Code and because the district court lacked both subject matter and personal jurisdiction over him owing to the fact the grand jury's term had expired before it indicted him in May 1993. The district court denied the motion and Lute appealed. This Court affirmed, holding that Lute was not allowed to attack the underlying conviction through a Rule 35 motion. After taking the case on review, the Idaho Supreme Court first decided the issue was not moot, even though Lute had completed serving his sentence several years prior to filing the Rule 35 motion. *Lute*, 150 Idaho at 839, 252 P.3d at 1257. The Supreme Court then stated:

> [W]here there is a jurisdictional defect, this court has authority to address that issue, even if it is not raised by the parties themselves. Furthermore, "[w]here it is apparent from the record that the act the defendant was criminally convicted for is not a crime according to the laws of the state, this Court has the authority to vacate the convictions *sua sponte* . . . .""Absent a statute or rule extending its jurisdiction, the trial court's jurisdiction to amend or set aside a judgment expires once the judgment becomes final, either by expiration of the time for appeal or affirmance of the judgment on appeal." However, where a court properly has

6

jurisdiction to consider a case--as it does here to consider Lute's I.C.R. 35 motion--and it is apparent that there is an issue concerning subject matter jurisdiction or that a defendant was convicted for something that is not a crime, this Court must correct that error.

*Lute*, 150 Idaho at 840, 252 P.3d at 1258 (citations omitted). Thereafter, the Supreme Court held that the district court never had subject matter jurisdiction over Lute's case because the grand jury never issued a valid indictment. *Id.* at 841, 252 P.3d at 1259. The Supreme Court reversed the district court's denial of Lute's Rule 35 motion for correction of an illegal sentence and remanded the case with the instruction to *grant* the Rule 35 motion and vacate Lute's conviction. *Lute*, 150 Idaho at 841, 252 P.3d at 1259.

In *Lute*, the Supreme Court did not specifically address Rule 35 standards of review, the scope of such motions, or procedural bars to having such a motion heard by the Court. As a result, both Wolfe's and the State's arguments raise multiple issues for which there is no guidance from the *Lute* decision and no clear answer from Rule 35 jurisprudence as it relates to the issue of subject matter jurisdiction.[3]

---

[3]    *State v. Lute*, 150 Idaho 837, 252 P.3d 1255 (2011), presents interesting issues when compared to *State v. Wegner*, 148 Idaho 270, 220 P.3d 1089 (2009), both in terms of motions that may extend a trial court's jurisdiction and what the proper procedure is for collaterally attacking an underlying conviction. In *Wegner*, the State charged the defendant as a juvenile, but later filed for a waiver of juvenile jurisdiction and charged Wegner as an adult. Wegner pled guilty to one count of lewd conduct. The district court entered a judgment of conviction, sentenced Wegner, and retained jurisdiction. After the district court relinquished jurisdiction, Wegner appealed, arguing he was improperly waived into adult court. This Court affirmed. Two and a half years after the affirmance, Wegner filed a pro se Idaho Criminal Rule 33(c) motion to withdraw his guilty plea on the basis that the adult court did not have subject matter jurisdiction over the criminal charges. The district court found it lacked jurisdiction to decide the Rule 33(c) motion and denied it. Wegner appealed and this Court concluded that, although the district court did have jurisdiction to decide the motion, Wegner was not entitled to relief because he failed to show a lack of subject matter jurisdiction over the underlying criminal case. *Wegner*, 148 Idaho at 271, 220 P.3d at 1090. The Idaho Supreme Court took review of the case and also affirmed. However, it decided the case on the basis that the district court *did in fact* lack jurisdiction to decide the delayed Rule 33(c) motion. *Wegner*, 148 Idaho at 271-72, 220 P.3d at 1090-91. Although the underlying issue in the Rule 33(c) motion was the district court's subject matter jurisdiction over the criminal charge, the Supreme Court stated, "[I]rrespective of the merits of Wegner's claim [of lack of subject matter jurisdiction], the district court was without jurisdiction to consider his Rule 33 motion." *Wegner*, 148 Idaho at 272, 220 P.3d at 1091 (footnote omitted). It noted that Rule 33 was not a rule that extended a trial court's jurisdiction to amend or set aside a judgment that has become final. *Wegner*, 148 Idaho at 272, 220 P.3d at 1091. The Supreme Court then went on as follows:

We preliminarily address the State's contention that this Court lacks jurisdiction to review any decision relating to the initial 2004 Rule 35 motion because the appeal was untimely and failed to confer jurisdiction upon this Court, as well as the State's contention that the successive Rule 35 motion was a motion to reconsider and we lack jurisdiction to review that as well. First, we agree that this Court has no jurisdiction to review the district court's decision on the initial 2004 Rule 35 motion because no timely appeal was taken from that denial order. Wolfe's motion for reconsideration did not toll the appeal period from that order. *See* I.A.R. 14(a). As to Wolfe's motion for a hearing on his motion for reconsideration, the State's arguments are without merit. Wolfe timely appealed from the district court's order denying the motion for a hearing. That timely notice of appeal conferred jurisdiction on this Court. *See State v. Thomas*, 146 Idaho 592, 594, 199 P.3d 769, 771 (2008) (noting the filing of a timely notice of appeal is jurisdictional). Whether the district court had jurisdiction to enter that order presents a separate question. *See State v. Armstrong*, 146 Idaho 372, 378, 195 P.3d 731, 737 (Ct. App. 2008) (concluding that trial court decisions made without subject matter jurisdiction are void and all other issues related to that decision are moot on appeal, without addressing appellate jurisdiction, inferring appellate jurisdiction is conferred by the timely appeal from an order later deemed void). Wolfe's timely notice of appeal was amended to include the denial of the successive Rule 35 motion, and we therefore have jurisdiction to review that order as well.

## C.     Motion for a Hearing

We first address whether the district court had jurisdiction in 2011 to entertain Wolfe's motion for a hearing on his motion to reconsider the initial Rule 35 motion that he filed in 2004. The question of a court's jurisdiction is fundamental and cannot be ignored. *State v. Kavajecz*, 139 Idaho 482, 483, 80 P.3d 1083, 1084 (2003). As a question of law, we freely review whether

---

> Wegner seeks, in essence, to utilize Rule 33 as a means of collaterally attacking a judgment that has become final. We decline to allow such an attack. The appropriate avenue for obtaining relief from a final judgment of conviction is a proceeding brought pursuant to the Uniform Post-Conviction Procedure Act set out in Chapter 49, Title 19, Idaho Code. Wegner may not utilize Rule 33 as a means of circumventing or supplementing this statutory remedy.

*Wegner*, 148 Idaho at 272, 220 P.3d at 1091. The juxtaposition of the two cases does not provide a clear reason as to why Rule 35 may be a permissible vehicle to collaterally attack an underlying conviction, as in *Lute*, whereas Rule 33 cannot be so used, as in *Wegner*.

a court has jurisdiction. *Id.* A court's lack of subject matter jurisdiction cannot be waived; parties cannot consent to an assumption of jurisdiction and cannot be estopped from asserting its absence. *Armstrong*, 146 Idaho at 374, 195 P.3d at 733.

The State asserts that the district court made a decision on the initial Rule 35 motion no later than 2006, that the district court lost jurisdiction once the time for appealing that decision expired, and that the notice of appeal made by Wolfe in 2011 was therefore untimely. It rests this argument on the assumption that Wolfe's motion to reconsider the denial of the initial Rule 35 motion did not extend the district court's jurisdiction.

Generally, the district court's jurisdiction to change or modify an order terminates when the judgment becomes final. *See State v. Jensen*, 149 Idaho 758, 761, 241 P.3d 1, 4 (Ct. App. 2010). If no appeal has been taken, finality occurs when the time to appeal expires forty-two days after the judgment. *Armstrong*, 146 Idaho at 374, 195 P.3d at 733. However, Rule 35 expressly allows a motion to correct an illegal sentence to be filed at any time. It is clear the district court had jurisdiction to issue a decision on Wolfe's initial Rule 35 motion. We must decide whether Wolfe's motion to reconsider, made within fourteen days of the denial of the initial Rule 35 motion to correct an illegal sentence, again extended the court's jurisdiction and whether the later motion for a hearing as to that issue was still within the court's power to decide.

A motion to reconsider the denial of a Rule 35 motion for *a reduction in sentence* is improper and the district court is without jurisdiction to consider the motion. *See State v. Hurst*, 151 Idaho 430, 439, 258 P.3d 950, 959 (Ct. App. 2001); *Bottens*, 137 Idaho at 731-32, 52 P.3d at 877-78; *State v. Heyrend*, 129 Idaho 568, 572, 929 P.2d 744, 748 (Ct. App. 1996). The rationale of these cases is dependent on the wording in Rule 35 itself, which states that only one motion for a reduction in sentence can be made by a criminal defendant. A motion to reconsider is essentially an attempt to renew the motion and ask for leniency a second time. Such a motion to reconsider the denial of a Rule 35 motion not only fails to extend a court's jurisdiction, but under Idaho Appellate Rule 14, it also does not extend the time for an appeal. *See State v. Hickman*, 119 Idaho 7, 8, 802 P.2d 1219, 1220 (Ct. App. 1990) ("The time for appealing from the denial of a Rule 35 motion is not extended under I.A.R. 14 by the filing of a motion to alter or amend."); *see also State v. Hartwig*, 150 Idaho 326, 329-30, 246 P.3d 979, 982-83 (2011) (holding a motion for reconsideration made forty-one days after entry of an order releasing the defendant

9

from sex offender registration requirements did not state a basis under Idaho Rule of Civil Procedure 60(b) to extend the court's jurisdiction beyond the forty-two-day time for appealing the district court's order); *State v. Nelson*, 104 Idaho 430, 431, 659 P.2d 783, 784 (Ct. App. 1983) (concluding that a motion to reconsider a suppression motion does not extend the time for filing an appeal).

We recognize that the wording in Rule 35 does not limit a criminal defendant to a single motion *to correct an illegal sentence*. Therefore, the rationale of case law precluding a motion to reconsider a plea for leniency under Rule 35 does not apply in a circumstance such as this. As noted above, we have generally adhered to the principle that a district court is free to entertain a motion to reconsider when made. *See Montague*, 114 Idaho at 320, 756 P.2d at 1084. Wolfe's motion to reconsider the denial of the initial Rule 35 motion to correct an illegal sentence was therefore not improper, and the district court possessed jurisdiction to entertain the motion. Further, the district court's decision on the motion to reconsider would have been appealable under Idaho Appellate Rule 11(c)(9).[4]

However, such recognition does not end our analysis. There was no order specifically ruling on the motion to reconsider and the next action on the motion was not taken until, at a minimum, five years later. In *Worthington v. Thomas*, 134 Idaho 433, 437, 4 P.3d 545, 549 (2000), the Court considered a motion to amend a post-judgment order (which the Supreme Court majority referred to as a "judgment") in a divorce case where the movant did nothing to obtain a ruling on the motion for seven years. The Court held that the motion had effectively been abandoned and therefore did not toll the finality of the judgment or post-judgment order for which the movant was seeking reconsideration. The Court stated:

> While Worthington is correct in her assertion that her motion to amend tolls the finality of the judgment, fairness and equity do not allow her to completely destroy the finality of the judgment by failing to pursue her motion. . . .
> While this Court is not going to set a specific time at which an unreasonable delay in prosecuting a motion to modify will fail to destroy the finality of a judgment, we hold that in the present case Worthington's seven year delay is too long.

---

[4]    Idaho Appellate Rule 11(c)(9) provides that an appeal as a matter of right may be taken in criminal proceedings from "[a]ny order made after judgment affecting the substantial rights of the defendant or the state."

10

*Id*.  Here, Wolfe failed to pursue the motion for reconsideration of his initial 2004 Rule 35 motion in any manner until he filed a motion for a hearing in 2011.  Wolfe made no reasonable efforts in the interim to secure a timely ruling.  We, therefore, hold that Wolfe abandoned his motion for reconsideration of the initial Rule 35 motion and the district court lost jurisdiction to entertain the matter.  Because the district court had no jurisdiction to grant the motion for a hearing, the order denying the motion must be affirmed.  This determination renders moot all other issues related to that denial on appeal.

**D.      Successive Rule 35 Motion**

Looking to the merits of Wolfe's successive Rule 35 motion filed in June 2011, with regard to the substantive allegation that the trial court lacked subject matter jurisdiction, the State asserts the issue is barred due to res judicata.  This Court exercises free review over the question of whether an action is barred by the doctrine of res judicata.  *Kootenai Elec. Co-op., Inc. v. Lamar Corp.*, 148 Idaho 116, 119, 219 P.3d 440, 443 (2009).  In *State v. Rhoades*, 134 Idaho 862, 11 P.3d 481 (2000), the Idaho Supreme Court stated:

> While we have never directly faced the question of whether the doctrine of res judicata can be applied to bar a subsequent Rule 35 motion after a defendant has failed to appeal an earlier motion based on the same grounds, other courts have addressed this issue.  In *United States v. Kress*, 944 F.2d 155 (3rd Cir. 1991), the Third Circuit Court of Appeals held that because the defendant
>
> > failed to appeal from the . . . order of the district court denying his motion with respect to the issue of the statutory rate of interest, that issue is now res judicata and Kress cannot relitigate the same issue two years later in the form of a second Rule 35 motion.
>
> *Id*. at 161.  In so holding, the Third Circuit noted it "could only decide this issue . . . on this appeal if we accept Kress's conclusion that he was free to bring successive Rule 35 motions on the same issues in the district court, thereby allowing him to bypass the normal rules of appellate procedures, rather than filing a timely appeal from the order responding to his first Rule 35 motion.  We cannot accept this premise.  *Id*. at 162.  We agree with the rational of the Third Circuit and hold the doctrine of res judicata can be applied to bar consideration of subsequent Rule 35 motions to the extent those motions attempt to relitigate issues already finally decided in earlier Rule 35 motions.

*Rhoades*, 134 Idaho at 863, 11 P.3d at 482.  The district court in *Rhoades* had previously decided the substantive issue put forth in Rhoades' initial Rule 35 motion and the Supreme Court held the successive motion tried to bring forth the same issue, though worded differently.  *Rhoades*, 134 Idaho at 864, 11 P.3d at 483.

11

In light of this holding, the procedural facts in this case could support a conclusion that Wolfe is barred by the doctrine of res judicata from filing a successive Rule 35 motion on the same grounds asserted in the initial Rule 35 motion. The question then becomes whether res judicata applies to an issue of subject matter jurisdiction and whether denial on procedural grounds means the issue asserted in the prior Rule 35 motion was finally decided.

There is persuasive authority determining that res judicata applies to the issue of subject matter jurisdiction:

> When a court has rendered a judgment in a contested action, the judgment precludes the parties from litigating the question of the court's subject matter jurisdiction in subsequent litigation except if:
> (1) The subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority; or
> (2) Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government; or
> (3) The judgment was rendered by a court lacking capability to make an adequately informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belatedly to attack the court's subject matter jurisdiction.

RESTATEMENT (SECOND) OF JUDGMENTS § 12 (1982); *see also Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982) ("A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not . . . reopen that question in a collateral attack upon an adverse judgment. It has long been the rule that principles of res judicata apply to jurisdictional determinations--both subject matter and personal."). We must determine whether this case still falls within one of the exceptions.

This Court has recognized that the State of Idaho has no power on tribal lands absent a grant of authority, and tribal sovereignty is subordinate only to the federal government and not the states. *State v. Ambro*, 142 Idaho 77, 79, 123 P.3d 710, 712 (Ct. App. 2005). Taking Wolfe's assertions--that jurisdiction over homicides occurring on tribal grounds against Indian victims was never granted to the State of Idaho--as true, a decision in this case to allow the judgment of conviction and the order denying the initial Rule 35 motion to stand may fall within the second exception. *See Ambro*, 142 Idaho at 80-81, 123 P.3d at 713-14 (noting the exercise of state authority may unlawfully infringe on the right of reservation Indians to make their own laws and be ruled by them or it may be preempted by federal law). As Wolfe presents compelling evidence that the district court in this case may have been without subject matter jurisdiction because jurisdiction over the charge rested exclusively in the federal courts, res

12

judicata may not operate to bar Wolfe's successive Rule 35 motion under the principles stated above.

This case presents the sharp conflict of the basic policies of finality of a judgment and the principle that a valid judgment may be issued only by a court with subject matter jurisdiction, especially in the context where that exercise of jurisdiction may infringe upon another tribunal's authority. The Restatement (Second) of Judgments illuminates the conflict. In a comment to section 12, the Restatements outline the problem of whether the determination of jurisdiction is conclusive in subsequent litigation when weighing the finality of judgments over the validity of those judgments:

> The problem poses a sharp conflict of basic policies. The principle of finality has its strongest justification where the parties have had full opportunity to litigate a controversy, especially if they have actually contested both the tribunal's jurisdiction and issues concerning the merits. Yet the principle of finality rests on the premise that the proceeding had the sanction of law, expressed in the rules of subject matter jurisdiction. As long as the possibility exists of making error in a determination of the question of subject matter jurisdiction, the principles of finality and validity cannot be perfectly accommodated. Questions of subject matter jurisdiction must be justiciable if the legal rules governing competency are to be given effect; some tribunal must determine them . . . . If the question is decided erroneously, and a judgment is allowed to stand in the face of the fact that the court lacked subject matter jurisdiction, then the principle of validity is compromised. On the other hand, if the judgment remains indefinitely subject to attack for a defect of jurisdiction, then the principle of finality is compromised.
>
> The essential problem is therefore one of selecting which of the two principles is to be given greater emphasis.

RESTATEMENT (SECOND) OF JUDGMENTS § 12 cmt. a (1982). Though traditional doctrine gave greater weight to the validity of judgments, and left the issue of subject matter jurisdiction forever subject to attack, modern doctrine has strayed more toward upholding the finality of judgments:

> When the question of the tribunal's jurisdiction is raised in the original action, in a modern procedural regime there is no reason why the determination of the issue should not thereafter be conclusive under the usual rules of issue preclusion. The force of the considerations supporting preclusion is at least as great concerning determinations of the issue of jurisdiction as it is with respect to other issues. Beyond this, there is virtually always available a procedure by which to obtain review of the original tribunal's determination of the issue, either by appeal or by injunction or extraordinary writ. Thus, the opportunity for an independent determination of the issue of subject matter jurisdiction that was protected in traditional doctrine remains available under the rule that the

13

> tribunal's determination of its own competency is res judicata. At the same time, applying the rule of preclusion considerably reduces the vulnerability of the judgment to subsequent attack and thus furthers the policy of finality.

*Id.* at cmt. c (citations omitted).

Unlike the circumstance in *Rhoades*, and despite the district court having claimed to address the substantive issue of subject matter jurisdiction in this case, it is clear that the denial of Wolfe's initial Rule 35 motion was on procedural grounds. Wolfe did present evidence and argument in support of his assertion that the trial court lacked jurisdiction. Within the record in this case, there is a map with the location where the murder occurred, showing that it lies within the boundaries of the Nez Perce Reservation. There are also documents indicating the victim was an enrolled member of a Native American tribe and received tribal benefits, defining him as an Indian for purposes of federal jurisdiction. Additionally, Wolfe asked for the following facts to be judicially noticed by the district court: the victim was an Indian; the crime occurred within the boundaries of a known Indian reservation; the prosecution did not obtain consent to act on behalf of the Nez Perce tribal authorities; and the crime of murder so committed is exclusively under the law of the United States. Wolfe cited supporting authority regarding the Indian Major Crimes Act, conferring jurisdiction to federal courts over crimes against an Indian, occurring within reservation boundaries, including *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136 (1980), *Odenwalt v. Zaring*, 102 Idaho 1, 624 P.2d 383 (1980), and *Boyer v. Shoshone-Bannock Indian Tribes*, 92 Idaho 257, 441 P.2d 167 (1968).

Based on the information and authority presented on the subject matter jurisdiction challenge, contained within the second successive petition for post-conviction relief, the district court stated:

> Indian Country is defined in part as "all land within the limits of any Indian reservation under the jurisdiction of the United States government notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation." 18 USC § 1151.
>
> Jurisdiction in Indian Country depends on the nature of the offense and status of the offender and the victim. Jurisdiction over crimes between non-Indians in Indian country is vested in the state courts, which is known as the McBratney Rule. *United States v. McBratney*, 104 U.S. 621 (1881). [The victim] was an enrolled member of the Nez Perce Tribe. What courts have jurisdiction over crimes by non-Indians against Indians in Indian Country is the question Mr. Wolfe's petition presents.
>
> As a general proposition crimes by Indians against Indians or their property in Indian country is within the jurisdiction of the tribal courts. The

14

exception to that general rule is the Indian Major Crimes Act, 18 U.S.C. § 1153, which enumerates fourteen crimes over which the federal courts are vested exclusive jurisdiction. *United States v. Johnson*, 637 F.2d 1224, 1231 (9th Cir. 1980). . . .

. . . .

This Act was originally passed in 1817 to fill jurisdictional gaps in Indian territory. It has been applied more recently to exclude state court jurisdiction when a crime occurs in Indian country and an Indian is involved. *Williams v. United States*, 327 U.S. 711 (1946) (federal court not Arizona court had exclusive jurisdiction over crime committed by non-Indian against an Indian in Indian Country).

State jurisdiction over Indians and Indian Country was expanded in 1953 with the passage of Public Law 280. Pub. L. No. 280, § 7, 67 Stat. 588 (1953). Public Law 280 conferred exclusive state jurisdiction over Indians and Indian Country in six states and granted other states, including Idaho, permission to assume jurisdiction over Indian affairs by affirmative legislative action. *Id.* The statute was amended in 1968 with the passage of the Indian Civil Rights Act which added the requirement of tribal consent before a state can assume jurisdiction. 25 U.S.C. § 1321.

In 1963, pursuant to Public Law 280, Idaho enacted I.C. § 67-5101, assuming limited jurisdiction over Indians and Indian Country.

> [restating section 67-5101, state jurisdiction for civil and criminal
> enforcement concerning certain matters arising in Indian Country,
> in full, which lists the civil and criminal matters over which the
> state assumed jurisdiction]

I.C. 67-5101 clearly did not confer general criminal jurisdiction or jurisdiction in particular over homicide to the state courts. In *State v. Mathews*, 133 Idaho 300, [986 P.2d 323] (1999), the Idaho Supreme Court found that state court jurisdiction and the execution of a state court search warrant on the reservation were proper in a murder case whether both the defendant and victim were Indians but the crime occurred off of the reservation in Lewiston. However, the court stated in dictum that "It is noteworthy that the State of Idaho, under I.C. § 67-5101, did not assume jurisdiction over murder crimes or the execution of state court search warrants within Indian Country." *Mathews*, 133 Idaho at 311, [986 P.2d at 334].

There appears to be little doubt that the federal courts had exclusive jurisdiction over Mr. Wolfe's offense. "Crime in which the victim, but not the perpetrator, is Indian are subject to (a) federal jurisdiction under § 1152, as well as pursuant to federal criminal law of general applicability, and (b) state jurisdiction where authorized by Congress." *United States v. Bruce*, 394 F.3d 1215, 1222 (9th Cir. 2005); *United States v. Johnson*, 637 F.2d 1224, 1232 n.11 [(1980)]; *see*, *Duro v. Reina*, 495 U.S. 676, 698, 699 (1990). Unlike some states, where jurisdiction over all offenses involving Indians was either granted or assumed, Pub. L. No. 280, § 7, Idaho limited its jurisdiction to the offenses itemized in I.C. § 67-5101. Murder is not included.

The district court recognized the possible merit of Wolfe's contentions that the state courts lacked subject matter jurisdiction over the charged offense. The court ordered further briefing from the State and the tribe. The tribe did not provide any briefing.

When denying the initial Rule 35 motion and later dismissing the second successive post-conviction petition (alleging ineffective assistance of counsel based on the failure to raise the issue of lack of subject matter jurisdiction), the district court addressed only the procedural issues of whether the pleadings were timely. Although the district court concluded "there is a genuine issue of whether the court had had jurisdiction because there is credible admissible evidence that [the victim] was in fact a Native American," it weighed the policies of fundamental justice with the need for finality of judgments and decided, in this case, that the need for finality of judgments outweighed other considerations. In doing so, it noted the issue of lack of subject matter jurisdiction in Wolfe's underlying criminal case was long-ripe for consideration and Wolfe had had prior opportunities to assert the claim. Thus, the court applied the limitations of the post-conviction procedures as written. Accordingly, the court concluded Wolfe was time-barred from asserting his claim for relief in a post-conviction petition.

It is clear the district court wrestled with the conflicting policies between finality and validity. On the one hand, the district court in this case did *not* ever substantively determine that it indeed had subject matter jurisdiction and a state court's exercise of jurisdiction in this case has the potential adverse impact of infringing on tribal authority. Each of these factors weighs towards not finding the issue of lack of subject matter jurisdiction is barred due to res judicata. On other hand, Wolfe has had numerous opportunities to raise the issue of subject matter jurisdiction: he did so in the initial Rule 35 motion to correct an illegal sentence, and again as the basis for the ineffective assistance of counsel claim in his second successive petition for post-conviction relief. He did not directly appeal the denial of the initial Rule 35 motion when the decision was rendered in 2004, nor did he appeal the 2006 dismissal of his second successive petition for post-conviction relief. The principle of finality of a court's decision is seriously compromised if Wolfe is allowed to continually attack the conviction. Moreover, there is evidence in the record that the federal district court denied a petition for a writ of habeas corpus by Wolfe for being untimely, meaning in essence, the federal courts declined to review Wolfe's subject matter jurisdiction claim.

16

"The principle of finality has its strongest justification where the parties have had full opportunity to litigate a controversy, especially if they have actually contested both the tribunal's jurisdiction and issues concerning the merits." RESTATEMENT (SECOND) OF JUDGMENTS § 12 cmt. a. We recognize that prior decisions were rendered on procedural grounds and there are strong considerations of federal or tribal authority to try this case. However, Wolfe has had no less than three opportunities to raise and litigate the issue. We, thus, decide that res judicata stands as a bar to Wolfe from relitigating the issue on the narrow ground that Wolfe failed to challenge two final decisions by the district court. He did not challenge the denial of the initial Rule 35 motion in the criminal case by appealing it and he abandoned his reconsideration motion. He likewise did not appeal the dismissal of his second successive petition for post-conviction relief in the civil case. We apply res judicata to this case in the interests of finality, as well as due to the challenging circumstances presented by a roughly thirty-year-old case. If the issue of subject matter jurisdiction were allowed to be continually raised and found to be lacking, the case would be retried. Due to the passage of time, witnesses may no longer be found or have passed away and evidence may have been lost or destroyed. In such a case, the interests of justice are best served in upholding the finality of judgments and requiring a defendant to seek relief through vehicles provided by the court system, namely timely petitions for post-conviction relief and timely appeals if such requests for relief were erroneously decided. Accordingly, although the district court erred in denying the successive Rule 35 motion to correct an illegal sentence based on the conclusion that Wolfe could file only one such Rule 35 motion, we uphold the denial on the alternative ground that the issue raised in the motion was barred by the doctrine of res judicata. *See State v. Pierce*, 107 Idaho 96, 102, 685 P.2d 837, 843 (Ct. App. 1984) (holding that where a ruling in a criminal case is correct, though based upon an incorrect reason, it still may be sustained upon the proper legal theory).

## III.

## CONCLUSION

The district court lost jurisdiction to rule on the motion for reconsideration of the denial of Wolfe's initial 2004 Rule 35 motion because Wolfe abandoned the motion. Consequently, the district court's order denying Wolfe's motion for a hearing on the motion for reconsideration is affirmed and the related issues are moot on appeal. We affirm the denial of Wolfe's successive Rule 35 motion to correct an illegal sentence on the ground that Wolfe is barred by the doctrine

17

of res judicata from relitigating whether the state courts lacked subject matter jurisdiction over the charged offense decided.

Judge LANSING and Judge GRATTON **CONCUR.**